# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PLACIDO MARTINEZ, JR.,

    Plaintiff,

v.                                          Civil No. 98-1576 LH/WWD

KENNETH APFEL,
Commissioner of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed September 3, 1999 [**docket # 6**]. The Commissioner denied Plaintiff's request for supplemental security income and child's disability insurance benefits. Plaintiff is 28 years old and alleges disability since November 2, 1990 due to mental retardation and memory problems.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that Plaintiff's impairments do not preclude him from performing his past relevant work as grocery sacker and counter clerk at a bakery, and that there are jobs in the national economy which he can perform. The Appeals Council denied Mr. Martinez' request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

    3. The standard of review in social security appeals is whether the Commissioner's final

decision, in this case the ALJ's decision, is supported by substantial evidence. <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. <u>Id.</u> (citation omitted).

4. Plaintiff raises the following specific allegations of error with respect to the ALJ's decision: (1) that the ALJ improperly presumed, as did the vocational expert, that an employer, (in compliance with the ADA) would accommodate the claimant's disabilities, thereby enabling the claimant to perform the work in question; and (2) that jobs that Plaintiff can perform do not exist in significant numbers in the local economy.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." <u>Thompson</u> at 1486. Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. <u>Id</u>. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. <u>Id</u>. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. <u>Reyes v. Bowen</u>, 845 F.2d 242, 243 (10th Cir. 1988).

7. Plaintiff quit school at 17. He never attended special education classes and stated that

his parents attempted to enroll him in special classes but that they were not available. Plaintiff functions at a borderline intellectual level and has received services from the Carlsbad Area Retarded Citizens Farm ("CARC") which provided training in some basic job skills. Although there is some discrepancy in intelligence tests administered to Plaintiff, the fact of his impairment is not disputed by the parties.[1]  The ALJ determined that Plaintiff's impairment did not meet or equal a listed impairment under §12.04, a finding which I consider to be based on substantial evidence from the record since the severity of the impairment does not meet all of subparts A through D in the listing.

8. The parties dispute Plaintiff's ability to pursue substantial gainful employment ("SGA"), particularly in light of his past work. Martinez has worked as a clerk at Allsups, but quit when he became too nervous to handle the cash machines and the money. Tr. at 41, 43, 60. He is currently working about 20 to 25 hours a week at two part-time jobs, as a janitor and a grocery sacker under the constant supervision of a job coach provided through a supported employment program and CARC. Tr. at 46-48; 49-50; 75. The ALJ correctly found that these jobs did not constitute SGA either because they were of short duration or because Plaintiff's earnings fell below the relevant threshold as established by the social security regulations. 20

---

[1] The WAIS-R test administered by Charles Bradshaw, Ph.D. in June 1992 shows a verbal score at 60 and performance score of 62 (full score of 59). Tr. at 192. Another WAIS-R administered by Raimond Johnson, Ph.D. in June 1994 showed a verbal score of 74, performance score of 87 (full score of 78). Tr. at 293. Dr. Bradshaw's report raised what Defendant characterizes as a credibility issue, but which seems to be more a question of impersonation and deception. Bradshaw said in his report: "I do not believe the intellectual differences in the testing can be attributed to the same person. There was some question at the time of my visit five years ago as to whether the individual I saw was indeed the claimant." Tr. at 192. I agree with Defendant that if there was any substance to this issue, it should have been given the attention afforded to matter of fraud, and not presented here in a review of a credibility analysis.

C.F.R. § 404.1574(b)(4); Tr. at 15.

9. Plaintiff also worked as a front counter clerk and delivery person in a bakery from April 23, 1993 to June 1994. The ALJ found that this job constituted SGA and that Plaintiff has the residual functional capacity to perform past relevant work. I find that neither conclusions are based on substantial evidence from the record.

**Residual Functional Capacity and SGA**

10. Before the car accident, Plaintiff worked at the bakery about 8 hours a day, five days a week. A job coach supervised him full-time. The duties of the coach were tantamount to looking over Plaintiff's shoulder as he worked. For example, in Plaintiff's janitorial job, the coach tells him where to wash the floor and bathrooms, and goes with him to dump the wastepaper baskets. Tr. at 46-47. Although the goal of the job coach is to show the trainee how to do the job with the objective of the trainee eventually doing the job on his own, Plaintiff does not seem to have had much success with this.

11. At the time of the hearing, Martinez had a job coach for the janitorial job for 8 months, at which he worked 10 hours a week. At the same time, he was also working as a grocery sacker for 15 hours a week for 3 to 4 weeks, with a full-time (for the hours Plaintiff actually worked) coach for that job as well. Because Plaintiff apparently had problems making judgments concerning how to sack items in a grocery bag, the coach was there at Plaintiff's side to advise him.

12. Likewise, Martinez had a job coach for the first 6 months he worked at the bakery.

4

Defendant argues that therefore Plaintiff was able to work on his own for a year at the bakery.[2] The underlying facts reveal otherwise. Although the record shows that Martinez was employed by the bakery from April 1993 to June 1994, Tr. at 281, he stopped actually working there after a car accident in late December, and never returned to the job. See Tr. at 276 (work activity report noting on July 7, 1994 that Plaintiff had worked only 2 weeks). Plaintiff was driving during the accident, which left him with a loss of memory. Plaintiff gave up his car license after the accident and does not drive anymore because he is "scared [he's] going to wreck or something." Tr. at 59. A doctor had recommended at the time that he not return to work at the bakery for a few months. When he did finally return, he worked as a grocery sacker but quit because he was "scared to work around handling money." Tr. at 57-58, 285.

13. The record bears out Plaintiff's contention. His earning statement for 1994 shows that he earned only $516.00 for the year. Tr. at 312. Thus, when the job coach was discontinued after six months, Plaintiff actually worked unsupported for about two months, not a year as Defendant contends. This fact, coupled with prior work history that does not constitute SGA, undercuts the ALJ's finding that Plaintiff retains the residual functional capacity to perform past relevant work.

14. A determination of whether an individual's work activity qualifies as substantial gainful activity requires the evaluation of certain factors outlined in 20 C.F.R. § 404.1573(a)-(e): (1) the nature of the individual work; (2) how well the individual performed the work; (3) if the individual performed the work under special conditions; (4) if the individual was self-employed;

---

[2] Plaintiff told the ALJ that after six months, CARC would send someone to check on how he was doing every couple of months. Tr. at 62.

and (5) the time spent at work.

15. Work done under special conditions is addressed in 20 C.F.R. § 404.1573(c), which provides that even work done in a sheltered workshop may show a claimant possesses "the necessary skills and ability to work at the substantial gainful activity level." If, however, a claimant's impairments prevent him from doing "ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work," it may be sufficient to show that the claimant is not working at the substantial gainful activity level. 20 C.F.R. § 404.1573(b); see Boyes v. Sec'y of Health & Hum. Serv., 46 F.3d 510, 512 (6th Cir. 1994); see also Nazzaro v. Callahan, 978 F.Supp. 452 (W.D.N.Y. 1997) (work performed under special conditions such as "with more assistance or supervision than is usually given other employees engaged in similar work may, regardless of the stated level of earnings, indicate that the employee is not working at the SGA level.")[3]

16. In this case, Plaintiff either worked almost totally under complete supervision by a job coach or was not earning what is considered to be SGA. In making findings on residual functional capacity, the ALJ relied on several factors which are categorized in the psychiatric review technique form and address various cognitive, social and performance criteria. Tr. at 16, 21. While these factors were correctly relied on by the ALJ, the findings made in these categories are not based on substantial evidence from the record.

17. For example, the ALJ relied on Dr. Johnson's psychological evaluation to conclude that Plaintiff was not precluded from work either physically or mentally. However, this report

---

[3] The ALJ recognized that sheltered work is "ordinarily presumed to be not substantial activity." Tr. at 15.

emphasized quite clearly that Plaintiff's ability to work is premised on continued supported employment.  Tr. at 295-95.

18. Plaintiff's earning statement further demonstrates that his past relevant work at the bakery was not SGA, and thus the ALJ's step four finding was erroneous.  According to his earning statement, Plaintiff made $5677.98 in 1993 but only $516.35 in 1994 (the statement also supports Plaintiff's contention that he did not work at the bakery after his car accident).  The ALJ concluded that, based on a "middle ground between the average monthly amount from sheltered work. . . and an unspecified upper limit," Plaintiff had engaged in SGA.  Tr. at 15.  The regulations allow consideration of other factors when the amount of earnings is *between* what is earned through ordinary work and through a "special environment."  20 C.F.R. § 404.1574(b)(6).  This is not the case here, where Plaintiff's earning are not above the SGA threshold for a special working environment.

19.  Earnings in amounts not greater than $500.00 (for the year 1993, in this case) are not considered to be SGA for work performed in a special environment. § 404.1574(b)(4)  Martinez had an average monthly income of $473.17 ($5677.98/yr ÷ 12).  Defendant contends that Plaintiff's earnings are $634.75 per month, based upon subtracting 4 months worth of work that was not done in the bakery from the total annual income, and then dividing that amount by the remaining 8 months.  These calculations virtually fly in the face of the regulation language, which requires that monthly earnings be figured based on a "calendar year."  Id.

**Jobs in the National Economy**

20.  Plaintiff takes issue with the ALJ's finding that Martinez can perform jobs in the national economy, contending that the ALJ erroneously relied on an employer's duty under the

7

Americans With Disabilities Act ("ADA") to make reasonable accommodations for disabled individuals. Plaintiff is correct that a vocational expert ("VE") cannot base step five findings on a duty to provide reasonable accommodations because such accommodations "may turn on highly disputed workplace-specific matters." Cleveland v. Policy Management Systems Corp., et al., 526 U.S. 795, 119 S.Ct. 1597, 1602 (1999); Jones v. Apfel, 174 F.3d 692, 693 (5th Cir. 1999). Thus, the Social Security Administration does not take the possibility of "reasonable accommodation" into account, "nor need an applicant refer to the possibility of reasonable accommodation" when applying for benefits. Cleveland at 1602.

21. However, Plaintiff has misread the ALJ's concern with accommodations for Plaintiff's "special needs." Tr. at 80. The ALJ was referring to the supported employment provided to Plaintiff through CARC by means of a job coach, not reasonable accommodations required under the ADA.[4] Nevertheless, Plaintiff's claim has merit on another basis -- the number of jobs identified by the VE does not constitute significant numbers as required. See 42 U.S.C. §423(d)(2)(A) (1991); Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992) (defining disability as an inability to do "work which exists in the national economy," which means work which exists in significant numbers either in the region where such individual lives or in several regions of the country).

22. In this case, the number of jobs identified as those which the Plaintiff had the residual functional capacity to perform were reduced by 7/8 to reflect the occupational base open to the Plaintiff given his RFC and special circumstances required related to supportive employment. Tr.

---

[4] Similarly, the VE qualified a certain number of jobs as those which are available under the Supported Employment Act ("as part of the [Rehabilitation] Act"). Tr. at 89.

at 81.

23. The VE identified the jobs of dishwasher, cafeteria counter attendant, cafeteria attendant and dining room attendant (busboy). He stated that for each category, approximately 62 jobs were available (at the reduced level) in the state, and 620 in each category for the entire region consisting of the southwestern states of Colorado, New Mexico, Oklahoma and Texas. Tr. at 85. The VE further opined that Plaintiff's hearing loss would eliminate problems in two of the categories (job noise being "loud enough to cause background noise to where it would make [Plaintiff's] hearing impairment perhaps even more magnified"), leaving only the jobs of dining room attendant and cafeteria attendant intact. Tr. at 83-84. This leaves a total of about 130 jobs in the state of New Mexico available to Plaintiff, largely based on his need for supported employment.

24. "Several factors go into the proper evaluation of significant numbers." Trimiar at 1330. These include the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. Id. Further, determining whether the number of identified jobs constitutes a "significant number" is "left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." Trimiar at 1330. I cannot consider common sense to have been a factor here in concluding that the number of jobs cited by the VE satisfies the statutory requirement, even assuming Plaintiff was able to obtain transportation to his work. See, e.g., Jimenez v. Shalala, 879 F.Supp. 1069 (D.Colo. 1995) (finding that 200-250 jobs spread across Colorado is not a significant number); Mericle v. Sec'y of HHS, 892 F.Supp. 843 (ED.Tex. 1995) (concluding that

9

870 jobs in the entire state of Texas is not a significant number).

25. In sum, I find that the ALJ erred in concluding that Plaintiff was engaged in SGA in his past work; and that the ALJ erred at step five in determining that Plaintiff was able to work at other jobs which were available in significant numbers.

26. Reversal is appropriate where, as in this case, additional fact finding would serve no useful purpose. Sorenson v. Bowen, 888 F.2d 706, 713 (10th Cir. 1989). It is within this Court's discretion to reverse the decision of the Secretary and to direct the Secretary to award the appropriate benefits. 42 U.S.C. § 405(g). The Commissioner's decision should be reversed and full awards should be awarded to Plaintiff.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing [**docket # 6**] be GRANTED and further recommend that Plaintiff be found to have a disability as defined by the social security regulations, and that full benefits be awarded for the relevant insured period. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE